We'll hear argument now in the case of Bless against the Cook County Sheriff. Mr. Colwin. May it please the court. My name is Jeffrey Colwin and I represent the plaintiff, Robert Bless. Summary judgment should have been denied in this case because the resolution of material fact disputes would allow jurors to find that retaliation or discrimination motivated their actions. I'd like to focus on four points today that we believe are more than sufficient to have allowed the case to proceed to a jury. The first point is the issue of the plaintiff's transfer upon his return to work in November of 2010. The undisputed facts are that after Robert Bless was elected to the McHenry County Commissioner position and immediately upon returning to work at the Cook County Sheriff's Office, he was immediately transferred from his long time assignment on the north side of the city to the south side, working overnights in Markham. In discovery, the defendants were asked to explain the reason for the transfer. There is no dispute that in discovery, the defendants first tried to explain the transfer by suggesting that the reason for it was that Markham was short-staffed. The defendants, after that information was provided, were forced to concede that there was no evidence to support the testimony that Bless was transferred due to short staffing. After that evidence was provided, the defendants provided no answer for the reason why, after Bless was elected, he was transferred from his long time north side assignment working day shift to the south side, working overnights. The absence of an answer would allow reasonable jurors to find that an unlawful motive caused that transfer. Mr. Cole, when I gather there's no requirement that he be a resident of Cook County. I believe that's true, but I don't believe that's in the record or was addressed in the court below. Some states have a requirement for a city or a county that they be a resident or within so many miles or time within the, but you're not claiming that's not a part of this record. All right. Your Honor, I do believe that the plaintiff lived in Cook County, worked for the Cook County, had an assignment in Rolling Meadows, which was near his home. And then when he was transferred, was transferred to Markham, which is also in Cook County. He was elected in another county, even though he lived in Cook? Yes, Your Honor. He was elected to the McHenry County board position. That's permitted in Illinois law, I gather. The issue of whether it is, was never raised by the defendant and was not addressed in the court below. And as far as I understand, was proper, all right. The inability of the defendants to provide any answer for the transfer would allow reasonable jurors to find that the defendants do not honestly believe that Bless was transferred for legitimate reasons. That's point one. No explanation for the transfer. Point two, there were conflicts in the evidence that reasonable jurors could resolve and in turn find, if viewed in plaintiff's favor, that the evidence supported the inference of retaliation or discrimination. Highlight a few of the main ones. First, the primary reason that the plaintiff was investigated and disciplined in this case is the allegation that he did not have secondary employment forms on file with the Cook County Sheriff's Office. In the evidence, it is undisputed that the plaintiff provided the forms signed in January of 2009 to his supervisor, Sergeant King. Sergeant King testified that he received the forms. Four other Cook County sheriffs testified that Sergeant King received the forms. It is also undisputed in this case that the defendants, the personnel department, and the designated representative for the personnel department admitted that they did not have good record keeping at the time and in fact lost the forms. Reasonable jurors could interpret this evidence and find that the defendants did not honestly believe that Bless did not have forms on file when five separate witnesses saw him turn them in and the defendants could not honestly believe that the absence of the personnel department having those forms was incriminating in one way or another because the defendants 30B6 witness designated representative admitted that the forms were not kept by the office. The second conflict in the evidence that reasonable jurors could use to find that retaliation or discrimination caused the employment actions is the contention that Robert Bless lied about submitting forms to the Cook County Sheriff's investigators when he was asked about them. There's no dispute that the district court found that the evidence that Bless lied was against the manifest weight of the evidence. If it's true that the evidence is such that the contention that Bless lied was against the manifest weight of the evidence, then surely reasonable jurors looking at that same could find that the defendants did not honestly believe that Bless lied when he met with investigators. The lie about secondary employment is the egregious act that the defendants used to try to separate what Bless did in comparison to the other employees. If the merit board couldn't find that Robert Bless lied, then certainly the individuals who are used to dealing with these cases on a daily basis, the individuals who met and interviewed Bless surely did not know or surely should have known that he did not lie. The last conflicting point that I'd like to address is the conflict over Bless's meeting with Sheriff Dart. There is no dispute that the two met. Bless testified it, testified about it, and Dart subsequently admitted remembering having the meeting with Bless. The meeting occurred in connection with a political fundraiser. The testimony from Bless was that they discussed the material points in this case, his political activity, that he was out on disability leave, that he worked for the sheriff's office. Sheriff Dart remembered all of the contours of the conversation but denied recalling the material points. Reasonable jurors could look at that evidence and conclude that Bless's version of the meeting is credible based on his testimony and that Dart's claim that he did not recall the meeting in the manner that Bless did was not believable based on his appearance as a witness. These three conflicts, if resolved in the plaintiff's favor as they should be on summary judgment, would allow reasonable jurors to find that discrimination or retaliation were behind the challenged employment actions. The third point that I would like to address is the honesty of the reasons that the defendants provided for their actions. The law in this circuit is clear that jurors may infer intentional retaliation or discrimination from evidence that the defendants would not have taken the same actions absent an employee's protected status. In this case, evidence that the defendants would not have taken the same actions absent Bless's protected status is evidence that they do not honestly believe the reasons that they gave for their decisions. And under the law in this circuit, jurors may consider evidence of dishonesty as affirmative evidence of guilt. Summary judgment should have been denied in this case because the defendants, in various ways through the witnesses and through their designated Rule 30b-6 witnesses, could not answer basic questions about the reasons for their employment actions. For example, as discussed earlier, the defendants could not explain Bless's transfer from the north side to the south side and, in fact, gave no answer for that. Defendants could not explain the seven comparator employees that were identified in discovery. These are seven people who violated the same rules as Bless, who were disciplined and and who did not suffer any of the same consequences as Bless. The testimony about the reasons why Bless was treated different from these employees would allow reasonable jurors to find that the defendants did not honestly believe the reasons that they gave. The defendants' Rule 30b-6 witness, Joseph Ways, a former FBI official, when asked to I don't know what the difference is, the investigator, Henry Hemphill, who's experienced in investigating these types of claims, said, quote, it's hard to come up with an answer. If the defendants cannot explain it in discovery, jurors could certainly find that they don't honestly believe the reasons that they gave for their actions. And the fourth point I want to raise, and I'm eating into my rebuttal time, so I will be brief, is the very specifics about the comparators. All seven of these comparators engaged in conduct that reasonable jurors could find is far more egregious than anything that Robert Bless did. Supervisors who engaged in this conduct suspended for two days. Employees who were expressly told you cannot work secondary employment and were caught doing so anyway. Suspensions, not charged with false statements. The one employee that the defendants could point to, to try to make the contention that employees are treated uniformly and fairly, even those facts supported the plaintiff. Because in that case, the employee, Patterson, was on disability, working unauthorized secondary employment, doing physical work as a security guard, meaning that he could have worked as a police officer for the sheriff, but was lying to them in order to avoid that work. None of that is true for Robert Bless. The facts are, unlike any of those comparators, Robert Bless had a 16-year history of impeccable service for the sheriff. His performance reviews indicated that he followed policies in every particular. The quote was, in total compliance. All of these facts would allow reasonable jurors to find that the defendants did not honestly believe the reasons that they gave and infer from the provision of dishonest reasons that the real reasons were unlawful, retaliatory, and discriminatory. If there are no questions from the panel, I would like to reserve. Counsel, what was the rank of Mr. Bless? He was a police officer, not a sergeant. Thank you. If there are no more questions from the panel, I would like to reserve the remainder of my time, two minutes for rebuttal, please. Certainly, Mr. Cohen. Thank you. Ms. Orey. May it please the court. Assistant State's Attorney Kathleen Orey for the Cook County Sheriff's Office, the individual defendants, and Cook County as a debater. The Cook County Sheriff's Office learned from another entity, that plaintiff, who was a sworn police officer and at the time receiving total temporary duty disability benefits. Ms. Orey, have you put some strange settings on your computer? It sounds like you're speaking inside a tin can. I don't believe I have any strange settings on my computer. Well, please proceed. We'll do the best we can. Okay. Risk management told the Sheriff's Office that plaintiff, who was receiving total temporary duty disability benefits at the time, because he said he was unable to work as a police officer, he was working unapproved secondary employment. The Sheriff's Office then conducted an investigation and through the Office of Professional Review, it met with the plaintiff and they concluded, OPR concluded, that plaintiff was untruthful about having approval for secondary employment. The Sheriff's Office then sought to terminate plaintiff through the Cook County Sheriff's Mayor Board, which is a separate entity. And plaintiff believes all of this happened because he's a white Republican. There's no evidence to support plaintiff's claims and the District Court correctly granted summary judgment in favor of my claims. Now, plaintiff's ultimate termination, whether he should have been terminated for his conduct, is not before this court because the District Court remanded that decision to the Mayor Board. But let's be clear, whether plaintiff had approval for the secondary employment is a totally different analysis from whether there was a discriminatory animus that motivated my client's decisions. Also, plaintiff's transfer in 2010 is not before this court. Plaintiff did not file this lawsuit until June of 2013, which is beyond the two-year statute of limitations for any claims against my clients. Before this court are two issues. Did the plaintiff present any evidence that his race or political affiliation was a motivating factor in my client's conduct? And second, should the plaintiff have been permitted to take Sheriff Dart's deposition? Sheriff Dart was an elected official and plaintiff had no evidence that Sheriff Dart was involved in his employment actions. Counsel, let me briefly ask the same questions. You don't know of any requirement of the residence of the employees of the Sheriff's Department? I am not aware that it's required to be a Cook County resident. All right, thank you. The district court's granting a summary judgment should be granted for three reasons. First, there's no evidence that any of the decision makers in this case, anyone in OPR or who recommended plaintiff to be terminated, had any knowledge that plaintiff was a Republican. Plaintiff himself concedes that he never told them he was a Republican. Second, this is a reverse race discrimination case and there is no evidence that anything fishy or unusual happened for plaintiff. And none of the comparators, plaintiff mentioned seven comparators, actually helped his case. Six of the comparators were not receiving total temporary and duty disability benefits at the time they were working unapproved secondary employment. That alone makes them different. But the one individual who was receiving total temporary and duty disability benefits, who was also working secondary employment, he was recommended termination and he was African-American. Third, plaintiff has no evidence to dispute my client's legitimate non-discriminatory reasons for seeking his termination, namely that he was working unapproved secondary employment while receiving total temporary and duty disability benefits. And the sheriff's office concluded he was not honest when he said he had approval. The district court correctly granted summary judgment on these claims. Regarding taking Sheriff Dart's deposition, there is no document for any sworn testimony connecting Sheriff Dart to the actions that happened against plaintiff. Case law is clear that when elected official, the plaintiff has to demonstrate that the plaintiff would have admissible evidence and Sheriff Dart answered interrogatories explaining he had no information. When this was before the magistrate judge, the magistrate judge recommended that plaintiff issue additional discovery, additional interrogatories to Sheriff Dart and the plaintiff never did that. On appeal, this is an abuse of discretion standard and the district court did not abuse his discretion in denying the deposition. I just want to quickly touch on some of the points that plaintiff talked about in his argument. I stated earlier that the transfer is not before this court. Regarding whether or not the plaintiff had approval on file for the secondary employment, opposing counsel said in January of 09, it's undisputed he had approval. However, plaintiff was injured and he was receiving total temporary duty disability benefits and the Sheriff's Office General Order 07-2 requires employees who are receiving TTD to receive approval again to make sure they can work the secondary employment while receiving TTD. There is no dispute that Sheriff Dart met the plaintiff at this Republican fundraiser of a mutual friend. However, there is no evidence to show that Sheriff Dart was involved in the actions taken against plaintiff. Ms. Orey, could you tell me how many sworn officers are in the Sheriff's Police Department? I don't know how many officers are in the Sheriff's Police Department, but there are thousands of Sheriff's Office employees. Well, I know there are a lot of employees. I mean, how many sworn officers? I don't know if that's in the record. Thank you. There's no evidence that the actions that the my clients took against plaintiff were for any pretextual reasons. Unless this court has any additional questions, we ask that you affirm the district court. Mm-hmm. Thank you, counsel. Anything further? Mr. Coleman? Yes, your honor. Briefly, if I may. I'd like to respond briefly to the arguments made by my colleague. First, the argument that the transfer is not properly before the court is an argument that was never raised in the district court. I don't recall it being raised in the appellate briefs, and it should not be considered. Number two, the defendant's reference to the disability benefits that Bless received is evidence for Bless and against the defendants. The undisputed evidence in this case is that Bless was permitted to receive these benefits under state law and under the policy because his medical activity restrictions prohibited him from being a police officer, but did not permit him from doing sedentary work, like sitting at the desk and being a lawyer or attending board meetings for McHenry County. My colleague stated that the policy that was in place at the time prohibited working second jobs while injured on duty status. That is not correct. The record is this. In 2005, there was a policy that stated that employees could not work second jobs while on disability unless they received specific approval in writing. In 2007, the policy said only that if an employee is on disability, supervisors need to request revocation, which did not occur. And in 2013, when the time that this was being investigated and charged, the policy stated that employees could work second jobs while on IOD as long as their activity restrictions were consistent with those second jobs, as was the case for Bless. And that's the difference between the comparator the defendants identified. He could work at the sheriff's office, but chose not to, preferring his second job. That was not the case with Bless.  Conflicts in the evidence and credibility questions that should go to the jury. For these reasons, we request that summary judgment be reversed. Thank you very much, counsel. The case is taken under advisement.